UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

GEORGE ARVIL VANCE )
)
V. ) No. 2:00-CV-213
)
CAPTAIN BLAINE WADE, *ETC*., )
*ET AL.* )

## **MEMORANDUM**

This is a civil rights action filed under 42 U.S.C. § 1983 against the City of Bristol Tennessee and two of its police officers, Captain Blaine Wade and Investigator James Breuer, each of whom is sued in both his official and individual capacities. Plaintiff claims that the officers used excessive force in handcuffing and "securing" him during the execution of a search warrant at his business. He also claims that the City of Bristol failed to properly train and supervise its police officers, specifically the two officers against whom he has filed this suit. In addition to his claims under § 1983, plaintiff has asserted state law claims for false arrest and assault and battery against the defendants.

The City of Bristol and its two officers in their official capacities have moved for summary judgment. (Doc. 61). The two officers have filed motions for summary judgment with regard to plaintiff's assertion of claims against them in their individual capacities. (Docs. 62, 64).

Only if the movant is entitled to judgment as a matter of law based upon facts about which there is no genuine dispute is summary judgment appropriate. F.R.Civ.P. 56(c). The non-moving party must be indulged with all possible favorable inferences from the

undisputed facts. *Plott v. GM Motors Corp.*, 71 F.3d 1190 (6th Cir. 1995).

The defendants have filed their statement of undisputed material facts in support of their respective motions for summary judgment.[1] Similarly, the plaintiff has filed his statement of undisputed material facts as part of his response in opposition to the motions for summary judgment.[2] From those respective statements of material facts the following appears:

On June 10, 1999, the Bristol Police Department was called upon to simultaneously execute seven (7) search warrants at various locations in Bristol, Tennessee, for the purpose of seizing illegal gambling machines. The simultaneous execution of seven (7) search warrant raids for gambling equipment was a major undertaking for the Bristol Police Department. The execution of these warrants commenced at approximately 6:00 p.m. on June 10, 1999.

One of the businesses for which a search warrant had been issued was Tooties Restaurant, a business in which the plaintiff had an ownership interest. Captain Wade was the ranking police officer in overall charge of the execution of the search warrants, and his duties included planning, implementing, and supervising the raids to seize the gambling machines. Investigator Breuer was the designated team leader to execute the search warrant at Tooties Restaurant.

Captain Wade, accompanied by Assistant District Attorney Gene Perrin, was at

---

[1] Doc. 64.

[2] Doc. 68-2.

Tooties Restaurant when the raid began at that location, but Wade left shortly after 6:00 p.m. to go to another raid location. Plaintiff was not present at Tooties when the search began, and he did not arrive until Captain Wade had departed. When plaintiff did arrive at Tooties, he was denied admittance, presumably by a police officer, but he ultimately was allowed to enter after identifying himself as the owner.

Plaintiff demanded to know if a search warrant existed, and was told that the warrant had been given to his wife who was seated in a nearby booth.

At this point, the parties have somewhat divergent opinions of what transpired. It is not so much a disagreement regarding what occurred; rather, plaintiff emphasizes some facts, defendant emphasizes others; and one party includes facts omitted by another. From plaintiff's version, it can be said that Investigator Breuer was rude, confrontational and even threatening toward plaintiff. From defendants' version, it can be said that plaintiff was uncooperative, argumentative, and refused to follow Breuer's instructions to sit down quietly while the officers did their job. Obviously, to the extent there is a dispute regarding a material fact, only the version most favorable to the plaintiff may be considered. Similarly, if there is more than one inference that can be drawn from any given fact, only the inference favorable to the plaintiff can be taken into account in ruling upon the defendants' motion for summary judgment. *Plott, supra*.

Fearing that plaintiff might attempt to tip off other businesses targeted by the search warrants, Investigator Breuer refused to allow plaintiff to answer the telephone in his business, and also refused to allow plaintiff to call his lawyer on the theory that plaintiff was

3

not under arrest. Plaintiff thereupon demanded that he be placed under arrest. According to plaintiff, the situation continued to deteriorate: Investigator Breuer became even more threatening, causing plaintiff to believe that Breuer "was going to violate [plaintiff's] civil rights;" plaintiff told all onlookers to "keep their eyes on Mr. Breuer," at which point Assistant District Attorney General Perrin exited the building; Mr. Breuer started to leave the building to get Mr. Perrin and, when he did so, plaintiff attempted to follow him; when he did so Breuer blocked his exit and ordered him to return to the room and sit down or that he was "going to put [plaintiff] down."

In the meantime, Captain Wade had returned to Tooties. Investigator Breuer stated that plaintiff should be arrested, at which point Captain Wade jerked the plaintiff's hands and cuffed his hands behind him.[3] Wade then escorted plaintiff outside to the police cruiser, pulling up on the handcuffs as he did so. There were at least thirty and perhaps as many as fifty people congregated around the front of the business at this time, some of whom included plaintiff's brother and other relatives. One of plaintiff's brothers, Charles Vance, had a confrontation with Investigator Breuer when he tried to enter the business.

Pursuant to Captain Wade's instructions, plaintiff sat on the rear seat of the police cruiser, with his feet on the ground. Thereafter, Wade pushed on plaintiff's shoulder and head, causing him to twist and roll on his side into the floorboard of the vehicle. Plaintiff's feet were still somewhat

---

[3]Interestingly, Wade testified during a discovery deposition that it was not he who placed the cuffs on plaintiff, and District Attorney General Perrin corroborated that assertion. However, apparently no one else has stepped forward to acknowledge responsibility for handcuffing plaintiff. Obviously, plaintiff's version must be assumed to be the truth for purposes of this motion for summary judgment.

outside the vehicle; Wade shut the door, essentially cramming plaintiff's feet and legs into the car as a result.

Plaintiff finally managed to sit up in the back seat of the vehicle, and he tapped his head on the separating cage to get the attention of an auxiliary officer sitting in the front seat. Plaintiff told this officer that the handcuffs were too tight, and that his neck and back had been hurt. After the auxiliary officer communicated this information to Captain Wade, plaintiff was removed from the vehicle and the handcuffs were removed.

Plaintiff claims that he suffered injuries to his neck and lower back as a result of the force utilized by Captain Wade in handcuffing plaintiff and forcing him into the floorboard of the rear of the police vehicle.

**MOTION FOR SUMMARY JUDGMENT OF BRISTOL AND THE TWO OFFICERS IN THEIR OFFICIAL CAPACITIES      (DOC. 61).**

If a plaintiff sues a municipal employee in his official capacity, that is the functional equivalent of suing the municipality itself. Suing both the municipality and its employee in his official capacity is therefore a redundancy. *Brandon v. Holt*, 469 U.S. 464, 471 (1985).

As far as § 1983 liability is concerned, plaintiff's allegations with respect to the City of Bristol are set out in paragraphs 19-21 of his complaint:

> 19. While Defendants Wade and Brewer [sic] were acting under color of law on behalf of the Defendant, The City of Bristol, Tennessee, on information and belief, the Plaintiff was subjected to abuse that is consistent with an institutionalized practice of the Defendant, The City of Bristol, Tennessee which abuse was known to and ratified by it.
>
> 20. On information and belief, the Defendant, The City of Bristol, Tennessee, had prior notice of the propensities of the Defendant Wade [and] took no action to stop such abuses.

5

> 21. The Defendant, The City of Bristol, Tennessee, failed to properly train, the Defendants Wade and Brewer [sic] which failure led to the injuries and damages sustained by the Plaintiff.

In paragraph 22, plaintiff recites that he is suing "the Defendants" under state law for false arrest, and assault and battery. It is assumed that plaintiff is asserting that Bristol should be held vicariously liable under *respondeat superior* for these state law torts.

*(a) The Section 1983 Claims*

As noted above, the suit against the municipality subsumes any suit against the employee in his official capacity. Further, *respondeat superior* has no application to §1983 claims against a municipality; the municipality can be held liable only for its own actions that causes a constitutional violation. *Monell v. New York City Department of Social Services,* 436 U.S. 658, 694 (1978). Proof of mere negligence will not support a claim against the City under § 1983, *Stemler, et al., v. City of Florence*, 126 F.3d 856, 864 (6th Cir. 1997); the plaintiff must show that his injury was caused by an unconstitutional policy or custom of the municipality that amounts to "deliberate indifference" to the rights of the plaintiff. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).

Attached to the motion for summary judgment filed by Bristol is the affidavit of Police Lieutenant Terry Napier, who manages training for the Bristol Police Department. Lieutenant Napier recites in his affidavit that the Bristol Police Department is accredited by the Commission on Accreditation of Law Enforcement Agencies. He also describes the training courses provided to both Captain Wade and Investigator Breuer by the City. Additionally, both officers were certified by Tennessee as law enforcement officers shortly after their employment by Bristol.

In his discovery deposition, plaintiff testified that he had "some unverified infor-mation" that the City of Bristol knew that Wade was abusive but nevertheless took no action to stop it. Although instructed to supplement his deposition testimony if he came across any relevant evidence

6

in this regard, he has never done so. As concerns his assertion that Bristol failed to properly train its officers, plaintiff stipulated that this allega-tion was based solely on the events of June 10, 1999, at Tooties restaurant. Plaintiff has filed nothing to support his allegations in his complaint that Bristol failed to train or supervise its officers, and neither has he filed anything to contradict the affidavit of Lieutenant Napier. It is incumbent upon a plaintiff to demonstrate that there is a dispute regarding some material fact that precludes the granting of summary judgment, *Celotex Corp. v. Cattrett*, 477 U.S. 317, 314 (1986), which this plaintiff has failed to do with regard to his § 1983 action against the City of Bristol and the two officers in their official capacities. Under the authority of *Monell* and *City of Canton*, *supra*, the motion for summary judgment on behalf of the City of Bristol, and Wade and Breuer in their official capacities, should be granted with respect to the § 1983 claims.

*(b) The State Law Claims*

With regard to plaintiff's state law claims for false arrest and assault and battery, those claims in reality are claims regarding violations of plaintiff's "civil rights," and Tennessee's Governmental Tort Liability Act provides immunity for those claims, Tenn. Code Ann. § 29-20-205. *See, e.g., Hale V. Randolph*, 2004 WL 1854179 (EDTN 2004). Therefore, plaintiff's state law claims against the City of Bristol, and against Wade and Breuer in their official capacities, should be dismissed.

**MOTION FOR SUMMARY JUDGMENT FILED BY BLAINE WADE IN HIS INDIVIDUAL CAPACITY (DOC. 62).**

*(a) The § 1983 Claims*

Regarding plaintiff's claim for false arrest, it is clear, under the authority of *Muehler v. Mena*, 544 U.S. 93 (2005), and *Michigan v. Summers*, 452 U.S. 692 (1981), that it was permissible

7

under the Fourth Amendment to handcuff plaintiff during the execution of the search warrant at Tooties. There is a line between a temporary detention and a formal arrest that is not always easy to discern. Although plaintiff has sued Mr. Wade for false arrest, there is nothing in this record to suggest that there was a formal arrest in the sense that the court is required to address the issue of probable cause *vel non.* He was handcuffed and placed in a police car, to be sure, but those actions could just as easily describe a *Mena*-type detention. Since plaintiff was allowed to get out of the police car, his handcuffs removed, and since he was allowed to re-enter and remain at his business after the warrant was executed, plaintiff clearly was detained in the sense of *Mena*, not arrested. Therefore, plaintiff has no cause of action under § 1983 for false arrest.

But, notwithstanding that plaintiff was constitutionally restrained during the execution of the search warranty, it is still possible that the force used to effectuate that restraint could have been excessive. Plaintiff contends that he was injured when Captain Wade placed the handcuffs on him too tightly; by Wade pulling up on plaintiff's handcuffed wrists when Wade walked him to the police car; and when Wade violently shoved him into the police car.

The law is "clearly established" in the Sixth Circuit that placing handcuffs too tightly on an individual may constitute excessive force. *Martin v. Heideman*, 106 F.3d 1308 (6th Cir. 1997). But it is also clear that to be actionable under § 1983 more is required than just overly-tight handcuffs:

> Not all allegations of tight handcuffing, however, amount to excessive force. In order to reach a jury on this claim, the plaintiff must allege some physical injury from the handcuffing, . . . , and must show that officers ignored plaintiff's complaints

8

that the handcuffs were too tight . . . .

*Lyons v. City of Xenia*, 417 F.3d 565, 575-76 (6th Cir. 2005).

In *Lyons*, the Sixth Circuit held that the claims of excessive force based on tight handcuffing failed because the plaintiff had alleged "little in the way of physical injuries caused by the handcuffing," and "more critically, she [had failed to] allege that her physical complaints to the officers went unheeded." *Id.* at 576.

The undisputed facts reveal that when Mr. Vance complained of the tight handcuffs to the auxiliary police officer seated in the front seat of the police car, Wade instructed that plaintiff be allowed to exit the police car and that his handcuffs be removed.

Plaintiff cites *Holmes v. City of Massillon*, 78 F.3d 1031 (6th Cir. 1996) for the principle that there does not have to be "extensive physical damage" to support an excessive force claim. *Holmes* indeed so holds; but when read in conjunction with *Lyons*, the conclusion is inescapable that a claim of excessive force attributable to tight handcuffing must be analyzed under the holding of *Lyons*, not *Holmes*.

Under the authority of *Lyons, supra*, plaintiff's claim of excessive force based on tight handcuffing must be dismissed because the cuffs not only were loosened, they were removed.

Plaintiff also complains of excessive force when he was escorted to the police car and then placed in it. Specifically, plaintiff alleges that after he was handcuffed, Wade grabbed the handcuffs and pulled up on them, forcing plaintiff to walk on his toes in an effort to minimize the stress and pain caused to his arms and shoulders. He also alleges that Wade essentially shoved him into the floorboard of the rear compartment of the police car and then used the car door to force plaintiff's feet and legs into the car, resulting in injuries to plaintiff's neck and shoulders. This

admittedly is a somewhat closer question than the other issues heretofore discussed.

In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court established the framework to be used by the courts when analyzing excessive force claims. First, the court must determine if there was a constitutional violation at all; if not, obviously there is no liability under § 1983. If, however, the court determines that there was a constitutional violation, the court must go further and determine if that constitutional right was clearly established at the time of the incident:

> The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to the reasonable officer that his conduct was unlawful in the situation he confronted.

*Saucier*, 533 U.S. at 201. If the constitutional right was not clearly established, the officer is entitled to summary judgment based upon qualified immunity. *Id.*

### (1) WAS THERE A CONSTITUTIONAL VIOLATION?

> Because "[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application," *Bell v. Wolfish*, 441 U.S. 520, 559, 99 S.Ct. 1861, 1884, 60 L.Ed.2d 447 (1979), however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. *See, Tennessee v. Garner*, 470 U.S. at 8-9, 105 S.Ct. at 1699-1700 (the question is "whether the totality of the circumstances justifie[s] a particular sort of . . . seizure").
>
> * * *
>
> [T]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. The Fourth Amendment is not violated by an arrest based on probable cause, even if the wrong person is arrested, nor by the mistaken execution of a valid search warrant on the wrong premises. With respect to a claim of excessive force, the same standard of

> reasonableness at the moment applies: "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers" violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary in a particular situation. (Citations omitted).
>
> As in other Fourth Amendment context, however, the "reasonableness" inquiry in an excessive force case is an objective one: The question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. [Citations omitted.] An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional. [Citations omitted.]

*Graham v. Connor*, 490 U.S. 386, 396 (1989).

The defendant Wade relies upon the affidavit of Mr. Jerry Loar, a retired Special Agent of the Federal Bureau of Investigation and currently the Dean of the Division of Public Safety, as well as an Associate Professor of Criminal Justice, at Walters State Community College in Morristown, Tennessee. Professor Loar opines that it was "reasonable to handcuff Mr. Vance and remove him from the premises in order to minimize the risk to the officers and in order that the search could continue [unimpeded by Mr. Vance's actions]." Plaintiff, of course, asserts that he was cooperative and causing no trouble, and the court must accept as true those assertions. However, as already discussed, under the *Mena* ruling it was permissible to restrain plaintiff, even by handcuffing, so Professor Loar's affidavit, at least in this regard, is beside the point. Professor Loar goes on to opine that the safest thing to do

11

in dealing with someone who has become belligerent and confrontational while an officer is attempting to execute a search warrant, is to handcuff the person and then attempt to calm him. Again, this is beside the point because plaintiff contends that he was not belligerent or confrontational. Rather, the question is whether pulling up on plaintiff's hands from behind as Wade walked plaintiff to the police car, and then roughly shoving him into that police car when plaintiff was cooperative, was an objectively unreasonable use of force. Professor Loar's affidavit does not address these questions.

Mr. Wade points out that the situation involving plaintiff had become "tense, uncertain and rapidly evolving." Not only were there two individuals in Tooties with whom plaintiff presumably was acquainted and who might be considered friendly to his cause, anywhere from thirty to fifty people had gathered *outside* Tooties, and some of those people included members of plaintiff's family. In light of the yelling and screaming, regardless of who initiated it, the situation was tense and held the potential for violence. But bearing in mind the court must grant to the plaintiff every favorable inference that can be drawn from the facts, *Plott, supra*, the court must presume that plaintiff was behaving rationally and calmly, whereas Captain Wade (and Investigator Breuer) were boorish, rude, and confrontational. In this same vein, it must be presumed that after plaintiff was handcuffed, he offered no resistance and was willing to go wherever the officers wished him to go. In light of these presumptions, pulling up on plaintiff's handcuffs while his hands were cuffed behind his back constituted excessive force which arose to the dimensions of a constitutional violation. Similarly, after he was seated on the car seat, shoving his head and shoulder

downward and essentially throwing plaintiff into the floorboard was unnecessary if it be assumed that plaintiff was compliant with the officers' instructions. And closing the car door to force plaintiff's legs into the car would have been a gratuitous use of force.

As *Graham* instructs, the "reasonableness" inquiry in an excessive force case is an objective one, *viz*, whether the officers actions were "objectively reasonable" in light of the facts and circumstances confronting them, without regard to the officer's underlying intent or motivation. *Graham, supra*, 190 U.S. at 396. *If* the facts were as plaintiff asserts, Officer Wade's actions were not "objectively reasonable" under the totality of the circumstances. Thus, under the plaintiff's version of the facts, there was a constitutional violation.[4] Thus, the analysis must proceed further:

(2) *IS WADE ENTITLED TO QUALIFIED IMMUNITY?*

*Lyons v. City of Xenia*, *supra*, dictates the resolution of this issue. In *Lyons*, the female arrestee sued a 240-pound male police officer for excessive force after he tackled her, knocking her to the floor, and then placed a knee on her stomach. The district judge concluded that a jury question was presented regarding the use of excessive force, and he also denied qualified immunity to the officer. The Sixth Circuit Court of Appeals affirmed the denial of qualified immunity, and the officer appealed to the Supreme Court, which ultimately remanded the case to the Sixth Circuit for reconsideration in light of the Supreme Court's decision in *Brosseau v. Haugen*, 543 U.S. 194 (2004). Upon remand, Circuit Judge Sutton wrote a relatively lengthy and very readable opinion in which the Sixth Circuit reversed itself, holding (1) the officer committed no constitutional

---

[4]Although it should be noted that the question is *extremely* close in light of *Lyons v. City of Xenia, supra.*

13

violation, and (2) the officer was entitled to qualified immunity in any event. 417 F.3d at 578. With regard to qualified immunity, the Court of Appeals stated:

> As *Brosseau* makes clear, "[q]ualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted.125 S.Ct. at 599. "Because the focus is on whether the officer had fair notice that her conduct was unlawful," *Brosseau* explains, "reasonableness is judged against the backdrop of the law at the time of the conduct. If the law at that time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation." *Id. Brosseau* leaves open two paths for showing that officers were on notice that they were violating a "clearly established" constitutional right- where the violation was sufficiently "obvious" under the general standards of constitutional care that the plaintiff need not show "a body" of "materially similar" case law, *id.,* and where the violation is shown by the failure to adhere to a "particularized" body of precedent that "squarely govern[s] the case here," *id.* at 599-600. Lyons has not satisfied either requirement for showing the violation of a "clearly established" constitutional right.

417 F.3d at 578-579.

The Court of Appeals concluded that the plaintiff had satisfied neither requirement for showing a violation of a "clearly established" constitutional right. *Id.*, 579. Firstly, the constitutional violation was not an obvious one. Secondly, the plaintiff failed to present a particularized body of precedent that squarely governed the case before the court. *Id.*

What was the situation confronting Captain Wade from his perspective? He knew he had been called back to Tooties by fellow officers because plaintiff was argumentative and uncooperative; plaintiff himself acknowledges that he was still arguing loudly with Investigator Breuer when he was handcuffed by Wade; the situation undeniably was tense

14

and potentially perilous due to the large crowd and the presence of plaintiff's relatives. It was sound police procedure, and constitutionally permissible, to restrain plaintiff and take him to a secure location as the search proceeded, in light of all the circumstances then confronting Wade.

Applying the *Brosseau-Lyons* rationale to these facts, there was no obvious constitutional violation in pulling up on plaintiff's wrists as he was escorted to the police car in light of the situation as it was then evolving. Such a maneuver minimizes the risk of sudden moves and resistance. By the same token, there was no obvious constitutional violation when Captain Wade forced the plaintiff into the police car as he did. Indeed, as mentioned in footnote 4, *supra*, it is questionable that a constitutional violation occurred at all in light of the *Lyons* opinion. Since there was no obvious constitutional violation, it is incumbent upon the plaintiff to show to the court some "materially similar" case law that "squarely governs" this case. He has not done so; Wade's counsel cites that he has been unable to find any such case law; and this court has found no such case law.

The defendant Wade is entitled to qualified immunity as far as § 1983 is concerned.

(*b*) *The State Law Claims*

With respect to plaintiff's state law claim for false arrest, the analysis is essentially the same as it is under § 1983. If the restraint was constitutionally permissible under the Fourth Amendment, then there was no false arrest under either § 1983 or state law. *See, Coffee v. Peterbilt of Nashville, Inc.*, 795 S.W.2d 656 (Tenn. 1990).

Lastly, plaintiff's state law claim for assault and battery also must fail. Some federal district courts in Tennessee have opted for what defendants' attorney described as a "new and improved analysis" of pendent state law claims for assault and battery.[5] The reasoning of these cases are

---

[5] *See, e.g., Myres v. Hooton*, 2005 U.S. Dist. Lexis 6981 (EDTN 2005).

premised on the Tennessee Supreme Court case of *Limbaugh v. Coffee Med. Cntr.*, 59 S.W.3d 73 (Tenn. 2001), an odd decision that further muddied already murky waters. Respectfully, that case is of questionable utility as far as determining a police officer's immunity *vel non* when he is sued under state law for assault and battery arising out of an arrest, *i.e.,* excessive force. Since no Tennessee court has squarely addressed the question, why not simply conclude that the defense of qualified immunity applies to state law assault and battery claims arising out of an arrest in the same manner as qualified immunity does to § 1983 claims for excessive force? That analytical route is certainly simpler. Again, recalling that no Tennessee court has yet spoken to the issue, this court chooses the more direct path, *viz*, a defense of qualified immunity, based on the same factors applicable in an excessive force suit under § 1983, is available to a police officer when sued under state law for assault and battery in connection with an arrest. By so holding, both state and federal courts are spared the potential logical inconsistency in finding that an officer has qualified immunity from federal liability under § 1983 for excessive force, yet is susceptible to a state law claim for assault and battery arising out of exactly the same conduct.[6]

The court finds that the defendant Wade is at the very least entitled to qualified immunity regarding the pendent state law claim for assault and battery.

**MOTION FOR SUMMARY JUDGMENT ON BEHALF OF DETECTIVE JIM BREUER IN HIS INDIVIDUAL CAPACITY (DOC. 64).**

Plaintiff alleges that it was Captain Wade who placed the handcuffs on him; that it was Wade who walked plaintiff to the police car while pulling up on plaintiff's handcuffed hands; that it was Wade who placed plaintiff in the police car; and that it was Wade who pushed and shoved plaintiff

---

[6]*Youngblood v. Clepper,* 856 S.W.2d 405 (Tenn. App. 1993) suggests that the Tennessee courts, when presented with the issue, will hold that qualified immunity is available to a law enforcement officer when sued for assault and battery arising out of an arrest.

16

into that car. According to plaintiff's statement of facts, other than yelling and perhaps attempting to provoke plaintiff, Investigator Breuer only prevented plaintiff from leaving Tooties.

Yelling and provocative conduct do not constitute constitutional violations. Plaintiff's brief suggests that Breuer's refusal to allow plaintiff to leave the business constituted a false imprisonment, but as discussed earlier in this opinion, *Muehler v. Mena, supra*, holds that an officer may temporarily restrain a person who is on the premises during the execution of a search warrant at that premises. Therefore, plaintiff's claim against Investigator Breuer for false arrest or imprisonment also must fail.

Plaintiff's state law claims against Mr. Breuer also will be dismissed for the reasons stated in the first paragraph of this section. First, he has presented no allegations, much less proof, of physical contact by Investigator Breuer, so his complaint for assault and battery must fail. Second, Investigator Breur acted reasonably and constitutionally in detaining plaintiff during the execution of the search warrant; therefore, the claim of false arrest also fails.

**CONCLUSION**

In accordance with this opinion, all motions for summary judgment [Docs. 61, 62, and 64] will be granted. The clerk will prepare an appropriate judgment.

The Scheduling Conference set for Thursday, July 12, 2007, at 8:30 a.m. is hereby CANCELLED.

SO ORDERED:

                                         s/ Dennis H. Inman
                                        United States Magistrate Judge